IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ALEJANDRO CRUZ RAMIREZ, <br><br> Petitioner, <br><br> vs. <br><br> MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Acting Attorney General of the United States; DAVID VENTURELLA, Acting Director of Immigration and Customs Enforcement; DAVID EASTERWOOD, St. Paul ICE Field Office Director; and KEVIN SCHNEIDER, Polk County Sheriff, <br><br> Respondents. | **4:26-cv-00268-SHL-SBJ** <br><br><br> **ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

## I.     INTRODUCTION.

Petitioner is a citizen of Mexico who has been present in the United States for an unknown period of time. He was arrested by officials with U.S. Immigration and Customs Enforcement ("ICE") on June 27, 2026. Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). Petitioner challenges his initial arrest and the constitutionality of his ongoing detention. For reasons set forth below, the Court concludes that Petitioner has failed to prove that his initial arrest was unlawful but has proven that his due process rights are being violated by virtue of Respondents' failure to provide him with an individualized bond hearing. Accordingly, Petitioner's Second Amended Petition for Writ of Habeas Corpus is GRANTED IN PART and DENIED IN PART. Within seven days, Respondents must provide Petitioner with an individualized bond hearing before an Immigration Judge to determine whether there are conditions of release that would ensure the safety of the community and Petitioner's appearance as required in removal proceedings.

## II.     FINDINGS OF FACT.

Petitioner is a citizen of Mexico who has been present in the United States for an undisclosed period of time. (ECF 12, ¶ 1; ECF 7-1, ¶¶ 12–13.) Petitioner has never been admitted or paroled to the United States. (ECF 7-1, ¶ 14.) He has, however, has been removed from the

United States on four prior occasions. (ECF 7-1, ¶ 32.) Since returning to the United States for the fifth time, it does not appear that Petitioner encountered immigration officials prior to being arrested on June 27, 2026, when he was stopped by ICE while driving in Urbandale, Iowa. (ECF 12, ¶¶ 3–4; ECF 7-1, ¶¶ 15–18.)

At the time of Petitioner's arrest, ICE was searching for a different person and observed Petitioner, who an ICE official believed "looked like" the person they were trying to find. (ECF 12, ¶¶ 3–4; ECF 7-1, ¶¶ 15–18.) When ICE officers approached the vehicle and asked for identification, Petitioner provided his Mexican passport. (ECF 12, ¶ 5; ECF 7-1, ¶¶ 20–21.) When ICE officers asked Petitioner about his immigration status, Petitioner admitted being in the United States illegally. (ECF 12, ¶¶ 6–7; ECF 7-1, ¶¶ 22–24.) ICE officers arrested him and allegedly presented him with "a handwritten I-200 (Warrant for Arrest of Alien)." (ECF 7-1, ¶ 28.) Petitioner disputes being shown a handwritten arrest warrant, and Respondents have not produced any such document. (ECF 12, ¶¶ 8–9; ECF 7-1, ¶ 28; ECF 9, p. 3.) Instead, Respondents say that "[a] handwritten I-200 is generally not retained in the file when it is replaced by one generated/produced by the electronic/computer system." (ECF 7-1, ¶ 28.)

Petitioner was transported to an ICE facility in Des Moines, Iowa, where he was served with a Notice to Appear and another I-200 arrest warrant. (ECF 12, ¶ 11; ECF 7-1, ¶ 31; ECF 7-2; ECF 7-3.) The second I-200 warrant has been produced. Petitioner is detained at the Polk County Jail and was scheduled to appear before an Immigration Judge on July 9, 2026. (ECF 12, ¶ 14; ECF 7-1, ¶ 36.) Petitioner brings four claims: unlawful detention under the *Accardi* doctrine (Count I); unlawful arrest (Count II); violation of procedural due process (Count III); and violation of substantive due process (Count IV). (ECF 12, pp. 23–24.) He asks for an evidentiary hearing. (ECF 9, p. 1.)

## III.    HABEAS CORPUS STANDARDS.

Petitioner is entitled to a writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v.*

*U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

**IV.    LEGAL ANALYSIS.**

  *A.  Petitioner Has Not Shown that His Arrest Was Unlawful.*

  Petitioner first challenges the lawfulness of his arrest. He makes two claims, both premised on violations of the Immigration and Nationality Act ("INA") and its regulations. In Count I, he contends that because the traffic stop was premised on mistaken identity, "[o]nce Respondents learned that Petitioner was not the suspect they were looking for and had authority to detain, they were obligated to cease questioning him and let him go . . . ." (ECF 12, ¶ 30.) That is, ICE agents illegally extended the stop without reasonable suspicion once Petitioner presented his passport. (ECF 12, p. 23.) In Count II, Petitioner argues that ICE agents did not arrest him in compliance with the provisions of 8 U.S.C. § 1226(a) and 8 U.S.C. § 1357. (ECF 12, ¶¶ 41–52.) Neither argument is meritorious.

  Count I is based on the *Accardi* doctrine, which "bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights." *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) (internal punctuation omitted) (quoting *In re United States*, 197 F.3d 310, 315 (8th Cir. 1999)). Petitioner argues that ICE agents extended the stop beyond what was allowed by DHS regulation and thus violated his rights. In relevant part, 8 C.F.R. § 287.8(b)(2) allows immigration officers with reasonable suspicion that a person "is an alien illegally in the United States" to "briefly detain the person for questioning." The Court assumes without deciding that § 287.8 contains "rights guaranteed [to Petitioner] by the statute or by the regulations issued pursuant thereto." *Nour v. Blanche*, No. 3:26-cv-00053, 2026 WL 1907286, at *2 (S.D. Iowa July 2, 2026) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954)).

  Here, ICE officers executed a traffic stop based on a belief that Petitioner was a different person who lacked immigration status, with this belief being dispelled when Petitioner confirmed his own identity with his Mexican passport. Petitioner contends that the moment ICE agents realized their mistake, any reasonable suspicion evaporated and the extension of the stop violated his rights. (ECF 12, ¶¶ 27–34.) However, by presenting immigration officers with only his Mexican passport as identification, Petitioner both dispelled the previous reasonable suspicion and raised a new reasonable suspicion about his immigration status. *Rodriguez v. United States*, 575 U.S. 348,

358 (2015) (acknowledging that additional reasonable suspicion may justify continued detention). Thus, despite the initial case of mistaken identity, ICE agents had renewed reasonable suspicion and were within their regulatory authority to continue to question him. Accordingly, the *Accardi* doctrine is inapplicable.

Turning to the issue of an arrest warrant, as a threshold matter, there is a factual dispute regarding whether ICE agents had one at the time of arrest. Respondents assert that an unidentified Deportation Officer ("DO") told Officer Jonathan Havlicek that the DO obtained a "handwritten I-200 (Warrant for Arrest of Alien)" at the time of Petitioner's arrest. (ECF 7-1, ¶ 28.) Respondents further assert, however, that they cannot produce the handwritten warrant because it "is generally not retained in the file when it is replaced by one generated/produced by the electronic/computer system." (Id.) Petitioner reasonably disputes whether the handwritten warrant ever existed. In that regard, Havlicek's Declaration does not provide a firsthand account regarding the supposed handwritten warrant; instead, Havlicek simply reports what an unidentified DO told him. This is hearsay—and not very persuasive, at that. Respondents are well aware that the presence or absence of an arrest warrant can be an outcome-determinative issue in immigration-related habeas cases. *See, e.g.*, *Christian Z. v. Bondi*, No. , 2026 WL 123116, at *2 (D. Minn. Jan. 16, 2026) (ordering immediate release when immigration officials failed to produce a warrant); *Jorge A.-G. v. Bondi*, No. 26-cv-1392, 2026 WL 444682, at *2–3 (D. Minn Feb. 17, 2026) (same). It is difficult to understand why they wouldn't preserve such a document if it existed.

Fortunately for Respondents, this problem is immaterial here because Petitioner has failed to establish that an arrest warrant was required at the time of his arrest. His position rests on 8 U.S.C. § 1226(a), which states that the Attorney General must issue a warrant before an alien may be arrested and detained, along with 8 C.F.R. § 236.1(b)(1) states that an arrest warrant may be issued "[a]t the time of issuance of the notice to appear, or at any time thereafter." Read together, these provisions appear to require the issuance of an arrest warrant (i) before the arrest itself, but (ii) not until a notice to appear has been filed.

8 U.S.C. § 1357(a) establishes, however, that immigration officials have the power to act without a warrant in some circumstances, including, as relevant here, the power to:

> arrest any alien who in his presence or view is entering or attempting to enter the United States . . . or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a

> warrant can be obtained for his arrest, but the alien shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . .

*Id.* § 1357(a)(2). In turn, 8 C.F.R. § 287.3(a) states that the "examination" referenced in § 1357(a)(2) shall be made "by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien." Section 287.3(d) then states that except in extraordinary circumstances or where voluntary departure has been granted, a determination must be made within forty-eight hours "whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear **and** warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued." (emphasis added). Parsing the language, these provisions give an immigration officer the authority to make a warrantless arrest if: (i) the officer has reason to believe the alien is in the United States without lawful status; (ii) the officer has reason to believe the alien is likely to escape before a warrant can be obtained for his arrest; (iii) the alien is taken without unnecessary delay for examination before a qualified immigration officer; (iv) the examining officer is different than the arresting officer unless no such person is "readily available;" and (v) a determination is made within forty-eight hours whether a notice to appear and arrest warrant will be issued.

Here, Petitioner has failed to establish that immigration officers lacked lawful authority to make the arrest without a warrant. It appears that Petitioner admitted to his unlawful status during his initial encounter with ICE agents, thus satisfying the first requirement of §§ 1357(a)(2) and 287.3(a). The fact that Petitioner had been in the United States for an indeterminate period of time without encountering immigration officials likely satisfies the second, particularly when coupled with the fact that he had been removed from the United States on four prior occasions. The third, fourth, and fifth requirements either were satisfied by virtue of ICE agents taking Petitioner to the ICE facility for further interviews and processing or became irrelevant once ICE agents obtained the formal I-200 warrant that Respondents were able to produce. Accordingly, Petitioner is not entitled to habeas relief based on the alleged impropriety of his arrest. The Court instead must turn to his due process arguments.

    B.   *Petitioner Is Entitled to a Bond Hearing Under the Due Process Clause.*

1.    *Demore* and *Avila* Do Not Foreclose Petitioner's Due Process Challenge.

Based on *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Court is obligated to conclude that Petitioner is "[a]n alien present in the United States who has not been admitted or who arrives in the United States" for purposes of 8 U.S.C. § 1225(a)(1), and thus subject to the detention provisions of that statute.  This does not mean, however, that Petitioner is foreclosed from bringing claims under the due process clause. District courts in the Fifth and Eighth Circuits—the two circuits to have adopted Respondents' interpretation of § 1225(a)(1) and (b)(2)—have held that being subject to § 1225(a)(1) "does not foreclose petitioners challenging their detention on due process grounds." *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 791 (S.D. Tex. 2026) (collecting cases). This Court will follow suit. "While Petitioner's claim under the INA is controlled by [*Avila*'s] interpretation of . . . 8 U.S.C. § 1225(b)(2), his due process claim remains before the Court." *Bonilla Chicas*, 821 F. Supp. 3d at 791.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523. "At the same time, however, [the Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* "[D]etainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

As a threshold matter, Respondents argue that mandatory detention under § 1225(b)(2) does not violate Petitioner's due process rights because he is entitled only to those rights that are provided to him under the statute. (ECF 7, pp. 14–19 (citing *Demore*, 538 U.S. 110 and *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024)).) *Demore* and *Banyee* are distinguishable. In *Demore*, the Supreme Court rejected a due process challenge to 8 U.S.C. § 1226(c), which mandates detention for non-citizens convicted of certain crimes. *Demore* extensively discussed "the fact that Congress enacted § 1226(c) based on evidence of increasing criminal activity by criminal aliens, as well as high rates of recidivism and flight." *Barrera Leon v. Warden*, No. cv 4:26-1341, 2026 WL 905191, at *2 n.2 (S.D. Tex. Apr. 2, 2026) (citing *Demore*, 538 U.S. at 518–19). The detainee there was a "criminal alien" who was detained for "the limited period of his removal proceedings." *Demore*, 538 U.S. at 531. Similarly, in *Banyee*, the Eighth Circuit concluded that there was no due process

violation when a removable "criminal alien" was detained for more than a year under § 1226(c). *Banyee*, 115 F.4th at 930–33. *Banyee* held that *Demore* had adopted a "bright-line rule" which foreclosed further due process analysis of § 1226(c) detention so long as deportation proceedings remained pending. *Id.*

Here, Petitioner is not a criminal alien who has been convicted of serious crimes. Instead, he simply lacks legal status. (ECF 7-1, ¶¶ 12–30.) The same was not true in *Demore* and *Banyee*, where the petitioners were subject to criminal detention because they committed one of the criminal offenses identified in § 1226(c). In those situations, the petitioners received "the full procedural protections our criminal justice system offers" before being detained pursuant to § 1226(c). *Demore*, 538 U.S. at 513. Because the same is not true for Petitioner, the Court will proceed to the merits of his as-applied due process challenge.

2.  The *Mathews* Factors Weigh In Favor of Petitioner's Due Process Claim.

To determine whether Petitioner's civil detention violates due process, the Court balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first factor, "[t]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529–31 (2004). The exact parameters of this liberty interest are hard to say because Petitioner has not shown how long he has been in the United States, thus making it difficult to know whether or to what extent he has the kinds of community ties that would cause his liberty interest to fall on the higher end of the spectrum. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"). Moreover, unlike many people who have been arrested by ICE in recent months, there is no suggestion that Petitioner interacted with immigration officials on prior occasions and was given permission to remain in the community during removal proceedings. *Compare Abbas v. Schneider*, No. 4:26-cv-00132-SHL-WPK, 2026 WL 1079292, at *7 (S.D. Iowa

Apr. 17, 2026). The first *Mathews* factor therefore weighs somewhat, but not overwhelmingly, in favor of Petitioner having a due process right to additional process.

The second factor is "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Darvin M. v. Bondi*, 817 F. Supp. 3d 740, 750 (D. Minn. 2026) (quoting *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)). Here, the risk of erroneous deprivation is high. The "right" in question is the right to an individualized bond hearing to determine if there are conditions of release that would ensure Petitioner's attendance at required proceedings and the safety of the community. There are numerous provisions of the INA acknowledging that aliens in removal proceedings often will be released on bond, including § 1226(a), § 1229(a)(1), and § 1229a(b)(5), among others. Yet the current state of the law in the Eighth Circuit is that the Executive Branch has the unilateral discretion to deny an alien a bond hearing by simply declaring that the alien is being detained pursuant to § 1225(b)(2) rather than § 1226(a). In other words, the Executive Branch is treating two side-by-side provisions of the INA as being mutually exclusive of one another even though neither provision says this.

As the undersigned has written in prior rulings, *see Abbas*, 2026 WL 1079292, at *2–6, the law in this area developed in an idiosyncratic way, starting with the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), which held in a very different context that detention under § 1225(b)(2) is mandatory for the duration of a removal proceeding. It seems highly unlikely that the Supreme Court expected, many years later, that the Executive Branch would begin claiming that § 1225(b)(2) is mutually exclusive of § 1226(a) and that immigration officials can simply declare a person to be governed by the former instead of the latter and thus subject to mandatory detention without a bond hearing. Instead, the most logical reading of the text of the two provisions is that they were meant to work in harmony, with detention being mandatory under § 1225(b)(2) "only until removal proceedings begin, at which point § 1229, § 1229a, and § 1226(a) kick in and entitle an alien to a bond hearing in some circumstances." *Abbas*, 2026 WL 1079292, at *6. Because the Supreme Court and Eighth Circuit have not had an opportunity to clarify what *Jennings* means in this new regime, however, district courts in the Eighth Circuit are stuck treating § 1225(b)(2) and § 1226(a) as mutually exclusive. Meaning: The Executive Branch can simply declare that it is choosing not to provide bond hearings despite Congress's expectation that such

hearings would occur. The risk of erroneous deprivation of the right to an individualized hearing is high in these circumstances, and thus the second *Mathews* factor weighs in Petitioner's favor.

The third *Mathews* factor requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "[E]nsuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest." *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1153–54 (D. Minn. 2025). All the same, the Government can still effectuate this interest. It simply needs to do so in the context of individualized bond hearings instead of an across-the-board declaration that it is choosing to follow one statutory provision of the INA to the exclusion of another. The administrative burden of holding individualized hearings is not significant, as the Government held them for dozens of years in situations like this one. The structure is already in place. Thus, this factor is either neutral or weighs modestly in favor of Petitioner.

In total, the *Mathews* factors weigh in favor of Petitioner, and thus the Court concludes that he has a due process right to additional proceedings before he can be subjected to indefinite detention. The only remaining question is what relief to order. Petitioner asks for immediate release or, in the alternative, an individualized bond hearing before an Immigration Judge. The Court has the authority to do either one. *See Lopez-Arvelo v. Ripa*, 801 F. Supp. 3d 668, 687–88 (W.D. Tex. 2025) (collecting cases recognizing that release and bond hearing are acceptable forms of relief). Here, for reasons explained above, outright release is inappropriate because Petitioner failed to meet his burden of proving that his initial arrest was unlawful. Instead, his constitutional injury is the deprivation of his right to an individualized bond hearing. The Court therefore will order that he be given an individualized bond hearing before an Immigration Judge within seven days.

## V.    CONCLUSION.

Petitioner's Second Amended Petition for the Writ of Habeas Corpus (ECF 12) is GRANTED IN PART and DENIED IN PART. Within seven calendar days, Respondents must provide Petitioner with a bond hearing before an Immigration Judge subject to the factors and standards that would apply to a bond hearing under 8 U.S.C. § 1226(a). The Immigration Judge may not deny bond on the basis that detention is mandatory. Instead, an individualized assessment

must be made. Within seven days after the bond hearing, one or both parties shall file a status report confirming that the hearing occurred and stating the outcome.


**IT IS SO ORDERED.**

Dated: July 20, 2026

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE